UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANNA M. LADOUCEUR,

                              Plaintiff,

v.                                                                    7:15-CV-00159

                                                                      (MAD/TWD)

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                          OF COUNSEL:

CONBOY, McKAY, BACHMAN                 LAWRENCE D. HASSELER, ESQ.
& KENDALL, LLP
*Counsel for Plaintiff*
407 Sherman Street
Watertown, NY 13601

HON. RICHARD S. HARTUNIAN             EMILY M. FISHMAN, ESQ.
United States Attorney for the        Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL             STEPHEN P. CONTE, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the

Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, it is recommended that the decision of the Commissioner be affirmed and the complaint (Dkt. No. 1) be dismissed.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is currently 61 years old, with a birth date of June 5, 1954. (Administrative Transcript at 30, 157.[1]) She completed high school and some college courses, but did not obtain a degree. (T. at 31-32.) She is a Licensed Practical Nurse ("LPN"), and also holds a certificate as a substance abuse counselor. (T. at 32, 44.) In the past, she worked as an LPN for twenty years, and as a substance abuse counselor for ten years. (T. at 32.) Plaintiff alleges disability due to fibromyalgia, chronic lower back and neck pain, ulcers, and diabetes. (T. at 33, 177.)

Plaintiff applied for Title II disability insurance benefits on February 29, 2012. (T. at 157.) The application was denied on May 1, 2012. (T. at 11, 58.) On May 16, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (T. at 68.) The hearing was held on May 15, 2013. (T. at 24.) On August 20, 2013, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 11.) On October 18, 2013, the Plaintiff filed a request for review with the Appeals Council. (T. at 7.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on January 13,

---

[1]     The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

2015.  (T. at 1.)  Plaintiff timely commenced this action on February 11, 2015.  (Dkt. No. 1.)

## II.     APPLICABLE LAW

### A.     Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or supplemental security income benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2015). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 404.1520(a)(4) (2012).  Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past

3

relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "An ALJ must set forth

4

the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010);[2] *see Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be 'more than a mere scintilla' of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

---

[2]    On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Commissioner of Social Security*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55322 (N.D.N.Y. May 17, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Roat v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

## III.    THE ALJ'S DECISION

The ALJ found the claimant met the disability insured status requirements of the Social

Security Act through December 31, 2016, and that she had not engaged in substantial gainful

activity since February 29, 2012, the alleged onset date of disability.  (T. at 12.)  The ALJ further

determined the claimant had the following "severe" impairments: osteoporosis, degenerative disc

disease, and fibromyalgia.  (T. at 13.)  However, she did not have an impairment or combination

of impairments that met or medically equaled a listed impairment.  (T. at 15.)  The ALJ next

determined claimant had the residual functional capacity ("RFC") to perform sedentary work

> except that she [can] lift and carry up to 10 pounds occasionally and frequently;
> stand and/or walk less than 2 hours in total in an 8-hour workday; sit without
> limitation, if allowed to periodically alternate sitting and standing for brief periods
> to reli[e]ve pain or discomfort.  The claimant is limited in the ability to push
> and/or pull, but can occasionally perform postural activities such as climbing,
> balancing, kneeling, crouching, and stooping, but she must never crawl.  The
> claimant can also occasionally reach in all directions, including overhead, and is
> not limited in handling, fingering and feeling, seeing, hearing and/or speaking.

(T. at 15.)  The ALJ ultimately found the claimant could perform her past relevant work as a

substance abuse counselor within her RFC and thus determined the claimant was not disabled

within the meaning of the Social Security Act.  (T. at 18-19.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff argues that the ALJ erred in evaluating her RFC.  (Dkt. No. 10 at 12-13.[3])

Additionally, Plaintiff asserts that the Commissioner erroneously concluded that she could

---

[3]        Page numbers in citations to the parties' briefs refer to the page number assigned by
the Court's CM/ECF electronic filing system.

perform her past relevant work. *Id.* at 13-15. Finally, Plaintiff argues that the Commissioner did

not sustain her burden of proving there are a significant number of jobs in the national economy

that Plaintiff could perform within her RFC. *Id.* at 15-16.

Defendant contends that the ALJ's decision applied the correct legal standards and is

supported by substantial evidence and thus should be affirmed. (Dkt. No. 11.)

V.     **DISCUSSION**

A.     **The Medical Evidence**

1.     <u>Seaway Healthcare</u>

Plaintiff received treatment from March of 2011 to February of 2013 at Seaway

Healthcare mainly through a primary provider, Physician Assistant S. Michael Ditta ("PA

Ditta"). (T. at 253-271, 292-305.) PA Ditta submitted two medical source statements dated May

31, 2012, and May 22, 2013, which were countersigned by David A. Dunn, M.D., on June 18,

2012, and May 29, 2013, respectively. (T. at 286-291, 359-365.) PA Ditta generally followed

Plaintiff for diabetes, high cholesterol, osteopenia, and osteoarthritis. (*See, e.g.,* T. at 255, 266,

270, 290, 294, 299, 300.) When she complained of abdominal discomfort, PA Ditta referred her

to Luis I. Canales, M.D. (T. at 258.) When it was determined that Plaintiff may have kidney

disease, PA Ditta referred her to Manasvi C. Jaitly, M.D. (T. at 298.) Plaintiff was also treated

by PA Ditta for occasional bronchitis, a heel spur, iron deficiency anemia, depression, and a

thumb laceration. (T. at 260, 261, 266, 268, 270, 297.) The diagnosis of fibromyalgia was

mentioned on only one office visit. (T. at 255.) Many of the physical exams performed by PA

Ditta showed normal results. (T. at 256, 258, 267, 270, 294, 298.) She was found to have full

range of motion in all extremities. (T. at 255, 263, 296, 299, 300.) She was alert and oriented.

(T. at 292, 294, 295.)  On July 24, 2012, she reported that she was walking daily.  (T. at 296.)

The medical source statement signed by PA Ditta on May 31, 2012, and countersigned by Dr. Dunn on June 18, 2012, indicates clinical findings of osteoporosis and fibromyalgia, and that Plaintiff reported being forgetful, in a fog, and had difficulty focusing sometimes.  (T. at 286, 289.)  Nevertheless, her exertional limitations included that she could occasionally and frequently lift and/or carry 10 pounds; she could stand and/or walk less than 2 hours in an 8-hour work day; she must periodically alternate sitting and standing to relieve pain or discomfort; and she was limited in pushing and pulling in her upper and lower extremities.  (T. at 287-288.)  As for postural limitations, she could never crawl, but she could occasionally climb, balance, kneel, crouch, and stoop.  (T. at 288.)  She was unlimited in handling, fingering, and feeling, but she could only occasionally reach in all directions.  (T. at 289.)  She had some environmental limitations to temperature extremes, noise, vibration, humidity, hazards, and fumes.  (T. at 290.)  PA Ditta/Dr. Dunn indicated Plaintiff's pain distracted her from her daily activities or work, and that she "is restricted from the work place and unable to function at a productive level."  (T. at 291.)  In the medical source statement signed by PA Ditta on May 22, 2013, and countersigned by Dr. Dunn on May 29, 2013, the opinions were essentially unchanged.  (T. at 359-364.)

2.    Luis I. Canales, M.D.

Plaintiff was seen by Nurse Practitioner Linda W. Letham ("NP Letham") of Dr. Canales' office on February 28, 2012, at the request of PA Ditta for complaints of abdominal pain and bloating.  (T. at 249.)  Plaintiff was alert and oriented, and her abdomen was soft, non-tender and non-distended, and bowel sounds were present.  *Id.*  Plaintiff was counseled on her diet and assessed with dyspepsia, anemia, and diabetes.  (T. at 249.)  An endoscopic procedure was

8

recommended and was performed by Dr. Canales on March 8, 2012.  (T. at 249, 252.)  A small

abnormality was found in the upper esophagus, and her medications were continued.  (T. at 252.)

Dr. Canales next saw Plaintiff on June 13, 2012.  She again was found alert and oriented, and her

abdomen was soft, non-tender and non-distended.  (T. at 313.)  Dr. Canales noted that the

endoscopic findings were benign, and it was suggested that she reduce a medication which may

have been causing a change in her bowel habits.  *Id.*  She was told to follow up in one year.  *Id.*

On March 5, 2013, NP Letham saw Plaintiff again.  (T. at 327-328.)  She was alert and oriented,

but had some epigastric tenderness.  (T. at 327.)  Upper gastrointestinal tract radiologic studies

revealed nonspecific abnormal findings.  (T. at 328.)  Plaintiff was diagnosed with

gastroesophageal reflux disease ("GERD") and another endoscope was ordered.  *Id.*  On March

22, 2013, Dr. Canales performed the scope which showed mild abnormal esophagus changes and

gastric polyps.  (T. at 331.)  On May 13, 2013, Dr. Canales' Office sent a letter to Plaintiff

indicating that a liver biopsy showed a fatty liver.  (T. at 358.)  There are no other records from

Dr. Canales and he did not provide a medical source statement.

       3.      <u>Manasvi C. Jaitly, M.D.</u>

Plaintiff followed with Dr. Jaitly for chronic kidney disease on four dates between July

12, 2012, and April 5, 2013.  (T. at 336-357.)  On July 12, 2012, Dr. Jaitly diagnosed very mild

kidney disease and encouraged Plaintiff to "use only tylenol for control of pain" instead of non-

steroid anti-inflammatory drugs.  (T. at 338.)  Upon return to Dr. Jaitly on October 12, 2012,

Plaintiff had normal renal function.  (T. at 341.)  On March 6, 2013, her kidney function was

slightly abnormal and he recommended follow up in four weeks.  (T. at 344.)  On April 5, 2013,

the kidney function was back to normal, and Dr. Jaitly indicated he did not need to see Plaintiff

on a regular basis.  (T. at 347.)  Physical exams at each of the visits were otherwise normal, and

she appeared comfortable.  (T. at 337, 340, 344, 347.)  Dr. Jaitley did not prepare a medical

source statement.

4.      Seaway Orthopedics

Plaintiff treated on April 10, 2012, and May 22, 2012, with orthopedic specialist Bedros

Bakirtzian, M.D., of Seaway Orthopedics.  (T. at 307 and 309.)  On April 10, 2012, Plaintiff

complained of pain in her right lower back, right buttock, right thigh, and the lateral aspect of her

right foot.  (T. at 307.)  She indicated that "she's recently been retired."  *Id.*  On exam, she was

awake and alert, and had "positive straight leg raising to about 80° bilaterally" as well as

discomfort with mobilization of her back on extension.  *Id.*  Dr. Bakirtzian assessed lumbrosacral

sprain, sciatica, and sacrolitis, and started her on outpatient physical therapy and aquatherapy.

(T. at 308.)  Diagnostic studies revealed arthritic changes.  *Id.*  On May 22, 2012, Plaintiff was

"feeling much better" and the pain and numbness in her legs were gone, but she had some right

small finger numbness.  (T. at 309.)  On exam, she was awake and alert, had good range of

motion in her neck with some discomfort, and normal mobility of her shoulders, elbows and

wrists.  *Id.*  She complained of night pain indicating to Dr. Bakirtzian that "she feels she needs a

muscle relaxant" which he prescribed.  (T. at 310.)  Dr. Bakirtzian did not prepare a medical

source statement.

5.      Elke Lorensen, M.D.

At the request of the Commissioner, the Plaintiff was examined by internal medicine

consultant Dr. Lorensen on April 5, 2012.  (T. at 272.)  Plaintiff complained of back and neck

pain, and fibromyalgia with symptoms of aching muscles and a foggy mind, and headaches.  *Id.*

Plaintiff reported activities of daily living that included cooking daily; doing cleaning, laundry and shopping every other day; showering and dressing herself; watching TV, listening to the radio, and reading; going out to visit friends and socializing with friends. (T. at 273.) On examination, she appeared in no distress, had a normal gait, and could walk on her heels and toes without difficulty. (T. at 274.) She had a normal stance, could "squat 80%," used no assistive devices, could rise from a chair without difficulty, and needed no help changing or getting on and off the exam table. *Id.* Her cervical spine showed full range of motion; there were no abnormalities of her thoracic spine; and her lumbar spine showed "full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally." *Id.* Straight leg raising was negative bilaterally, and she had full range of motion of the upper extremities, knees, and ankles bilaterally. (T. at 274-75.) Her hips were essentially normal, and her joints were stable. *Id.* She had two trigger points at the base of her neck on each side. (T. at 275.) Her mental exam was normal and she was oriented in all spheres. *Id.* Diagnostic studies of Plaintiff's lumbar spine showed minimal degenerative changes, and her cervical spine showed no acute changes. *Id.* Dr. Lorensen found no restrictions based on the examination. *Id.*

**B.    Plaintiff's Residual Functional Capacity to Perform Past Relevant Work**

1.    Determination of Plaintiff's Residual Functional Capacity

Plaintiff claims the ALJ erred in determining that she retains the RFC to perform her past relevant work as a substance abuse counselor because, citing the Ditta/Dunn medical source statements (T. at 289, 362), she "suffers from fatigue and forgetfulness and has a hard time focusing" and she "has increased frustration, irritability, and confusion." (Dkt. No. 10 at 12.) Plaintiff also argues that her headaches prevent her from working on a regular and continuing

11

basis. *Id.* at 13. At the heart of Plaintiff's arguments is that the RFC finding of the ALJ is inconsistent with the limitations imposed by her physical condition and her pain. The Commissioner argues that the ALJ's RFC finding is properly supported in the record. (Dkt. No. 11 at 7-13.) For the following reasons, the Court agrees with the Commissioner.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing despite his or her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomatology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis. *Id.; Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).

To properly ascertain a claimant's RFC, an ALJ must assess a claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. §§ 404.1545(a), 404.1569(a). Non-exertional limitations or impairments, including impairments that result in postural and manipulative limitations, must also be considered. 20 C.F.R. §§ 404.1545(b), 404.1569(a); *see also* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions that the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F. Supp. 2d at 150 (citation omitted). Further, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations. *Martone*, 70 F. Supp. 2d at 150 (citation

12

omitted).

In determining Plaintiff's RFC, the ALJ relied upon the findings and opinions of Plaintiff's treating primary care provider, PA Ditta, whose reports were countersigned by Dr. Dunn. (T. at 17-18; *see also* T. at 286-91, 359-64.) In their medical source statements, PA Ditta/Dr. Dunn listed Plaintiff's exertional limitations as she could occasionally and frequently lift and/or carry 10 pounds; she could stand and/or walk less than 2 hours in an 8-hour work day; she must periodically alternate sitting and standing to relieve pain or discomfort; and she was limited in pushing and pulling in her upper and lower extremities. (T. at 287-288.) As for postural limitations, she could never crawl, but she could occasionally climb, balance, kneel, crouch, and stoop. (T. at 288.) She was unlimited in handling, fingering, and feeling, but she could only occasionally reach in all directions. (T. at 289.) She had some environmental limitations to temperature extremes, noise, vibration, humidity, hazards, and fumes. (T. at 290.) In the medical source statement signed by PA Ditta on May 22, 2013, and countersigned by Dr. Dunn on May 29, 2013, the opinions were unchanged. (T. at 359-364.) The ALJ gave "great weight" to these opinions "noting the special treating relationship with the claimant, and to the extent it is consistent with the medical record demonstrating claimant's inability to engage in exertional activities superceding a sedentary limitation." (T. at 18.)

The ALJ's RFC determination concerning Plaintiff's physical limitations directly corresponds to her abilities and limitations listed by PA Ditta/Dr. Dunn and is sufficiently explained and supported in the record. (T. at 15.) Many of the physical exams performed by PA Ditta showed normal results. (T. at 256, 258, 267, 270, 294, 298.) She was found to have full range of motion in all extremities. (T. at 255, 263, 296, 299, 300.) She was alert and oriented.

(T. at 292, 294, 295.)  On July 24, 2012, she reported that she was walking daily.  (T. at 296.)

On January 22, 2013, she was "doing well."  (T. at 293.)

When Plaintiff saw NP Letham of Dr. Canales' office for abdominal pain on February

28, 2012, Plaintiff was alert and oriented, and her abdomen was soft, non-tender and non-

distended, and bowel sounds were present.  (T. at 249.)  Dr. Canales later performed an

endoscopic procedure which showed benign results.  (T. at 313.)  Dr. Canales and NP Letham

saw Plaintiff for a total of three office visits and at each visit Plaintiff was noted to be alert and

oriented.  (T. at 249, 313, 327.)  Plaintiff was ultimately diagnosed with GERD, but Dr. Canales

did not provide a medical source statement, and there is nothing in his records that showed she

had any physical limitations as a result of the GERD.  Dr. Jaitly followed Plaintiff for mild

kidney malfunction, but physical exams at each of the visits were otherwise normal, and she

appeared comfortable.  (T. at 337, 340, 344, 347.)  Orthopedist Dr. Bakirtzian treated Plaintiff on

two office visits.  (T. At 307, 309.)  On the first visit he found she had discomfort with

mobilization of her back on extension.  (T. at 307.)   Diagnostic studies revealed arthritic

changes.  (T. at 308.)  At the second visit, Plaintiff was "feeling much better" and the pain and

numbness in her legs were gone, but she had some right small finger numbness.  (T. at 309.)  On

exam, she had good range of motion in her neck with some discomfort, and normal mobility of

her shoulders, elbows and wrists.  *Id.*  Consultant Dr. Lorensen found no physical restrictions

based on an examination of Plaintiff.  (T. at 275.)  However, the ALJ gave only "some weight" to

the opinion of Dr. Lorensen since the record showed Plaintiff had some physical limitations.  (T.

at 18.)

Plaintiff argues the ALJ's RFC finding was unsupported because of her pain, fogginess,

and headache symptoms. (Dkt. No. 10 at 13.) Plaintiff asserts the ALJ failed to consider her testimony that she has concentration problems, difficulty with frustration, and has headaches three to five times a week. (T. at 33-35.) However, the ALJ found that Plaintiff's allegations of a disabling impairment unsupported by treatment notes in the record and Plaintiff's own statements about her activities. (T. at 18.) The Court agrees.

The Court reviews an ALJ's findings of fact concerning Plaintiff's credibility and the medical opinion evidence under a substantial evidence standard. "It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dept. of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation and internal punctuation omitted). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529; *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010); *see* Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *5 (SSA July 2, 1996). The ALJ is required to consider all of the evidence of record in making the credibility assessment. *Genier,* 606 F.3d at 50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3)).

First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *2. This finding "does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms." *Id.* If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. *Id.* An individual's statements about his pain are not enough by themselves to

establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *Id.* Here, the ALJ determined that Plaintiff's medically determined impairment could reasonably be expected to cause the symptoms alleged by Plaintiff. (T. at 16.)

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to "'consider the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence.'" *Genier,* 606 F.3d at 49 (quoting 20 C.F.R. § 404.1529(a)); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. SSR 96-7p, 1996 WL 374186, at *2.

The ALJ must consider all evidence of record, including statements the claimant or others make about his or her impairments, restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1512(b)(3)). A claimant's "symptoms can sometimes suggest a greater level of severity than can be shown by

the objective medical evidence alone."  SSR 96-7p, 1996 WL 374186, at *3.  However, when the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors:  (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3)(I)-(vii).

Here, as noted, Plaintiff argues that the ALJ erroneously failed to consider how Plaintiff's concentration problems, difficulty with frustration, and headaches would affect her ability to stay on task and perform sustained work activities.  (Dkt. No. 10 at 12-13.)  With regard to such complaints and how they affected her ability to work, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effect of those symptoms not fully credible.  (T. at 18.)  Here, the ALJ properly reviewed the symptom-related factors, and discussed a variety of those factors in view of other evidence in the record such that the Court finds the credibility determination is supported by substantial evidence.  (T. at 16-18.)

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651

(N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, 96 Civ. 9435 (JSR)(SEG), 1999 WL 185253, at *5, 1999 U.S. Dist. LEXIS 4085, at *15-16 (S.D.N.Y. Mar. 25, 1999) (citations omitted)). "A finding that [a claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams*, 859 F.2d at 260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony "undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not" disabled). "Further, whatever findings the ALJ makes must be consistent with the medical and other evidence." *Id*. at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

In making the credibility determination here, the ALJ reviewed Plaintiff's activities of daily living, the exam findings of the medical professionals, the medications she took and their effectiveness, and the treatment Plaintiff received. (T. at 16-18.) In March of 2012, Plaintiff reported that she had no problems with personal care such as dressing, bathing, and feeding herself, and that she prepared "all kinds" of meals on a daily basis. (T. at 196-97.) She reported she could walk, drive a car, and go out alone. (T. at 198.) In April of 2012, she reported activities of daily living that included cooking daily; doing cleaning, laundry and shopping every other day; showering and dressing herself; watching TV, listening to the radio, and reading; going out to visit friends and socializing with friends. (T. at 273.) In May of 2013, she testified that she could take care of all her personal needs, she can walk about a half mile to a mile, she could do housework, laundry and shopping. (T. at 37-39.) She could visit her sister in Canada and substitute on a bowling team if she felt up to it. (T. at 39-40.) An ALJ can properly consider that the claimant's varied activities in determining that allegations of disabling

limitations are not fully credible.  *Poupore*, 566 F.3d at 307.

Plaintiff also testified she did not experience any side effects from any medications.  (T. at 36.)  When Dr. Jaitly diagnosed very mild kidney disease, he encouraged Plaintiff to "use only tylenol for control of pain" instead of non-steroid anti-inflammatory drugs.  (T. at 338.)  The medical records do not reveal any other issues regarding Plaintiff's medications.

As for Plaintiff's assertion of limitations related to headaches and pain (Dkt. No. 10 at 12-13), PA Ditta/Dr. Dunn indicated in the medical source statement dated June 18, 2012, that Plaintiff reported being forgetful, in a fog, and had difficulty focusing sometimes.  (T. at 289.)  In their clinical assessment of pain detailed in the initial medical source statement, PA Ditta/Dr. Dunn noted that Plaintiff's pain distracted her from her daily activities or work, and she was restricted from the work place and unable to function at a productive level.  (T. at 291.)  At the same time, they noted that her pain had "decreased from 8-10 daily to about 3-5 daily with water exercises."  *Id.*  In the medical source statement of May 22, 2013, PA Ditta/Dr. Dunn found that Plaintiff had pain daily which was reduced after aqua therapy.  (T. at 364.)

Notably, however, treatment notes authored by PA Ditta in 2012 and 2013 showed that Plaintiff was walking daily, she was alert and oriented, and her physical exams were unremarkable.  (T. at 292, 294, 295, 296.)  The records do not outline a single complaint or finding of headaches or difficulties focusing.  She was "doing well" in January of 2013.  (T. at 293.)  Additionally, Dr. Canales and NP Letham reported Plaintiff to be alert and oriented, and likewise did not note any problems with headaches or concentration.  (T. at 249, 312, 327.)  Dr. Bakirtzian also found Plaintiff alert and oriented and made no notations regarding headaches or concentration issues.  (T. at 307, 309.)  While Dr. Lorensen indicated Plaintiff complained of

headaches (T. at 272), she noted Plaintiff "dressed appropriately, maintained good eye contact, and appeared oriented in all spheres" and had no evidence of "impaired judgment or significant memory impairment." (T. at 275.)

The basic mental demands of competitive work include the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 404.1545(c); *see also* SSRs 85-15, 96-9p. In this regard, the record is devoid of Plaintiff having any limitations in those areas and it does not support the claims of debilitating pain and headaches, or problems with concentration. All in all, the record is consistent with the ALJ's RFC determination. Therefore, the Court finds it is supported by substantial evidence and the correct legal standards were applied by the ALJ in determining the RFC.

### 2. Plaintiff's Past Relevant Work

At step four of the sequential evaluation, the ALJ found that Plaintiff was capable of performing her past relevant work as a substance abuse counselor. (T. at 18.) Plaintiff essentially argues that the ALJ did not properly find Plaintiff could perform her past relevant work given her nonexertional mental functional limitations of pain, headaches, and concentration difficulties. (Dkt. No. 10 at 13-15.) The Commissioner argues that Plaintiff's work as a substance abuse counselor was properly considered past relevant work, and the ALJ properly found she could perform the requirements of that job. (Dkt. No. 11 at 13-15.) As set forth below, the Court finds the Commissioner's step four finding was correct.

Plaintiff stated she worked as an LPN and her most recent job was as a substance abuse counselor for ten years. (T. at 32.) At step four in the analysis, the ALJ must consider whether

20

the plaintiff has the RFC to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In order to survive step four, "the claimant has the burden to show an inability to return to his previous specific job *and* an inability to perform his past relevant work generally. This inquiry requires separate evaluations of the previous specific job and the job as it is generally performed." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (citations omitted, emphasis in original). Here, the ALJ found that Plaintiff could perform her past relevant work as a substance abuse counselor based upon the testimony and report of the vocational expert ("VE") who opined Plaintiff could perform the job as a substance abuse counselor "as she actually performed it and as it is performed in the national economy." (T. at 44, 239.) Because the ALJ's finding that Plaintiff could perform this past relevant work as a substance abuse counselor as generally performed is sufficient to negate a finding of disability at step four, it is not necessary for the Court to determine whether Plaintiff could perform her past relevant work as actually performed. *See Jasinski,* 341 F.3d at 185; *Jock v. Harris,* 651 F.2d 133, 135 (2d Cir. 1981); *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). Nevertheless, as noted, the VE opined that Plaintiff could perform the job as she actually performed it. (T. at 239.) The VE noted "the job is sedentary with only occasional reaching - no other physical requirements that exceed the RFC. Can sit/stand/walk as needed." *Id.*

Here, Plaintiff's first argument that she could not perform the requirements of her past relevant work reiterates her earlier argument that the ALJ did not correctly determine her RFC. (Dkt. No. 10 at 14.) As determined above and contrary to Plaintiff's assertions, substantial evidence supports the ALJ's well-reasoned RFC finding. The ALJ was not required to include additional mental limitations in the RFC because none were supported by the record. As such,

the ALJ was entitled to rely on the VE's responses to his interrogatories, based on his RFC determination. *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 114 (2d Cir. 2010) (court found that ALJ properly posed hypothetical question to the VE, when that hypothetical was based on ALJ's correct RFC assessment).

Next, Plaintiff argues that she could not perform her past relevant work as a substance abuse counselor because her RFC was for sedentary work, yet she described her actual duties as being at the light exertional level. (Dkt. No. 10 at 14.) At step four, however, Plaintiff bears the burden of showing that she would be unable to perform her past relevant work, both as she actually performed it and as it is generally performed in the national economy. *See Jasinski,* 341 F.3d at 185; *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir.1981); 20 C.F.R. §404.1560(b)(2). Here, as the VE explained, and as a review of the U.S. Department of Labor's *Dictionary of Occupational Titles (DOT)* (4th ed. rev. 1991) confirms, Plaintiff's former job of substance abuse counselor, DOT No. 045.107-058, is classified as sedentary work. (T. at 44, 238.) Thus, even if Plaintiff could not perform her past relevant work as she performed it at the light exertional level (T. at 44), the ALJ properly relied on the testimony of the VE that a hypothetical individual, with Plaintiff's specific limitations, could perform this work at the sedentary level as it is generally performed in the national economy. (T. at 44, 239.) *See also* 20 C.F.R. § 404.1560(b)(2). Thus, on the basis of Plaintiff's inability to meet her burden at step four, the ALJ correctly determined that she was not disabled. (T. at 18.)

### 3. Other Jobs in the National Economy

Moreover, the ALJ was not required to consider Plaintiff's age at step four, as Plaintiff contends. (Dkt. No. 10 at 15.) At step four, the ALJ considers only whether an individual's RFC

permits her to do her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *see also* 20 C.F.R.§ 404.1560(b)(3)(vocational factors of age, education and work experience are not considered at step four). It is only at step five (which the ALJ did not, and was not required to reach here), that the ALJ considers other vocational factors, including the individual's age, to determine if other work exists in significant numbers in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).[4]

Because the ALJ correctly decided Plaintiff's case at step four, he was not required to proceed to step five of the sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). In short, the ALJ's RFC determination, and his use thereof at step four of the sequential evaluation process, are supported by substantial evidence and correct legal principals were applied. The Court finds the ALJ properly determined that Plaintiff was not disabled since she retained the RFC to perform her past relevant work as a substance abuse counselor. (T. at 18; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g)). The ALJ's determination was properly based on Plaintiff's vocational factors and RFC as well as the VE's testimony and report. (T. at 44, 239; *see also* 20 C.F.R. §§ 404.1520(g), 404.1560(c), 404.1563-65, 404.1566(e)). Accordingly, the Court recommends that the ALJ's decision be affirmed.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be affirmed and Defendant's motion for judgment on the pleadings be **GRANTED** and the complaint (Dkt. No. 1) be **DISMISSED.**

---

[4]At step four, the ALJ also does not consider whether the claimant's past relevant work exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(b)(3).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 87 (2d Cir. 1993) (citing *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

Dated: February 22, 2016
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge